# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:21-CR-56 |
| v. ) | |
| ) | Judge Travis R. McDonough |
| DEKARLOS FORT and ) | |
| DEMETRIUS BOWMAN ) | Magistrate Judge Susan K. Lee |
| ) | |
| ) | |

# ORDER

Before the Court is Defendant Demetrius Bowman's motion to suppress (Doc. 72). Magistrate Judge Susan K. Lee filed a report and recommendation, recommending that the Court deny Defendant's motion to suppress, and Defendant timely filed objections. (Docs. 101–02.) The Court has conducted a *de novo* review of the record as it relates to Defendant's objections and, for the following reasons, will: (1) **OVERRULE** Defendant's objections to the report and recommendation (Doc. 102); (2) **ACCEPT** and **ADOPT** the report and recommendation (Doc. 101); and (3) **DENY** Defendant's motion to suppress (Doc. 72).

## I. STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C). *De novo* review does not, however, require the district court to rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The magistrate judge, as the factfinder, has the opportunity to observe and to hear the witnesses and to assess their demeanor, putting her in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th

Cir. 1999). A magistrate judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *see also United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

## II. BACKGROUND

On May 25, 2021, a grand jury returned a six-count indictment charging Defendant with: (1) conspiracy to distribute 100 grams or more of a mixture and substance containing heroin and 40 grams or more of a mixture and substance containing fentanyl and (2) conspiracy to distribute 50 grams or more of methamphetamine (actual), among other counts charged against one or more of his co-defendants. (Doc. 1.) On December 6, 2021, Defendant filed a motion to suppress all evidence seized as a result of the traffic stop on July 3, 2020, and all statements he made to law enforcement. (Doc. 72.) He argued that the evidence was obtained in violation of his Fourth Amendment right to be free from unreasonable seizures and that he made the statements to law enforcement without the advisement of *Miranda* warnings. (*Id.*) According to Defendant, the search of his vehicle was without warrant, without probable cause, and the result of an unlawful extension of a temporary detention for the issuance of a traffic citation. (*Id.* at 1.) Further, Defendant represented in the motion that he was not advised of his *Miranda* rights at the scene of the arrest, nor during a subsequent custodial interrogation.[1] (*Id.*)

On January 25, 2022, Magistrate Judge Lee held an evidentiary hearing on the motion to suppress. The Government called the following witnesses: (1) Drug Enforcement Administration ("DEA") Task Force Officer Justin Headden, (2) DEA/Bartow-Cartersville Drug

---

[1] At the evidentiary hearing, however, the Government offered into evidence an audio and visual recording, which captured an officer advising Defendant of his *Miranda* rights. (Doc. 101, at 6.) In light of this evidence, Defendant has apparently abandoned his contention that he was never given a *Miranda* warning. (*Id.* at 23.)

2

Task Force Agent Edward Leon, (3) Georgia Department of Public Safety ("GDPS") Sergeant Kendall Stanley, and (4) GDPS Sergeant Jay Thompson (collectively, "officers"). (Doc. 101, at 1–2.) Defendant called no witnesses at the hearing. (*Id.* at 2.) After the hearing, Magistrate Judge Lee entered a report and recommendation, recommending that the Court deny Defendant's motion to suppress. (*Id.* at 1.) Magistrate Judge Lee concluded that: (1) the officers' testimony credibly met the Government's burden to establish probable cause for the stop, (2) the officers lawfully prolonged the stop and searched the vehicle because they established probable cause by credibly testifying that they smelled marijuana emanating from the vehicle, and (3) Defendant received *Miranda* warnings, and knowingly and voluntarily waived those rights when he made statements to the officers. (*Id.* at 11–27.)

On February 25, 2022, Defendant filed an objection to the report and recommendation (Doc. 102), and, on March 11, 2022, the Government filed a response (Doc. 103). Defendant objects to: (1) the finding that Stanley's testimony credibly established probable cause for the traffic stop, (2) the finding that the officers' testimony credible established probable cause for the search of the vehicle, and (3) the finding that Defendant knowingly and voluntarily waived his right to remain silent. (Doc. 102, at 2.) Defendant did not object to the description of the evidence presented at the hearing as outlined in Magistrate Judge Lee's report and recommendation; he only objected to some of her findings that the evidence presented was credible. (*Id.*) After reviewing the record before the Court and finding the facts to be consistent with Magistrate Judge Lee's report and recommendation, the Court **ADOPTS BY REFERENCE** the facts as set out in the report and recommendation. (Doc. 101, at 1–7); *see, e.g.*, *United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2013) (affirming the district court's adoption of the facts set out in a magistrate judge's report and recommendation

3

when the defendant did not object to the facts outlined by the magistrate). The Court will refer to the facts only as necessary to analyze the issues raised in Defendant's objections to the report and recommendation.

### A. Probable Cause for the Stop

Defendant argues that Magistrate Judge Lee erred in finding Stanley's testimony, which established probable cause for the stop, to be credible. (Doc. 102, at 2–7.) Magistrate Judge Lee accurately set out the legal framework to assess whether a vehicle stop was constitutional. (Doc. 101, at 7–9, 11–12); *see United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) ("This circuit has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." (citing *Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004))); *United States v. Lott*, 954 F.3d 919, 922 12 (6th Cir. 2020) ("[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." (quoting *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005))). She analyzed the constitutionality of the stop under the probable-cause test because the uncontradicted testimony was that Stanley paced the vehicle and found it to be traveling 82 miles per hour in a 70-mile-per-hour zone, in violation of Georgia Code Annotated § 40-6-181(a)(3), and thus initiated a traffic stop. (Doc. 101, at 12.)

Defendant does not argue that Stanley's testimony, if true, would be insufficient to support a finding that he had probable cause to make the stop. (Doc. 102, at 4–6.) Rather, he argues that Stanley's testimony was not credible, and, therefore, the stop was pretextual. (*Id.*) A decision to credit the testimony of one witness over another is "virtually never" error, so long as

4

the witness's testimony is facially plausible, internally consistent, and uncontradicted by extrinsic evidence. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). Further, no contrary testimony was presented at all at the hearing on this motion. (Doc. 101, at 13.)

Defendant argues that Stanley, who initiated the traffic stop, did not give credible testimony because there was no corroboration, and the stop was pretextual. (Doc. 102, at 5.) Stanley testified that he believed he had probable cause to make the stop because he paced Defendant's vehicle with his own, found it to be speeding, and noticed that the vehicle drifted to touch the white hashed lines between lanes. (*Id.*) However, there is no footage of the vehicle touching the lines, and Stanley did not use his radar to measure the vehicle's speed because it had not been calibrated. (*Id.*) Defendant contends that while Stanley's subjective motivations for the stop are not relevant to the analysis of its constitutionality, his motivations are certainly relevant to the credibility of the officer's testimony, especially given the lack of corroborating evidence. (*Id.* at 6.)

Magistrate Judge Lee considered these arguments in making her credibility determination. (Doc. 101, at 12–14); *see VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."). She nonetheless found Stanley's testimony to be credible for the following reasons:

> Stanley credibly explained why he paced the Jeep instead of using his radar equipment, why the video equipment did not record the speeding infraction, why he states/records the reasons for a stop once he activates his blue lights, and why he did not complete a warning ticket for the observed traffic infractions once the contraband was discovered. Even after repeated and vigorous on cross-examination, Stanley's testimony remained plausible, internally consistent, and uncontradicted by extrinsic evidence. When Stanley told Fort why he was stopped on the video, Fort did not deny that he was speeding and then rapidly

5

> slowed down. And, as noted above, there was absolutely no testimony that Fort was not speeding.

(Doc. 101, at 14.) The Court agrees with Magistrate Judge Lee's credibility determination and application of the law and thus finds no reason to disturb her well-reasoned conclusion regarding probable cause for the stop. The Court comes to this conclusion with consideration of the considerable deference owed to the magistrate judge's factual determinations in this context. *See Irorere*, 69 F. App'x at 236; *Navarro-Camacho*, 186 F.3d at 705.

## B. Probable Cause for the Search

Defendant also objects to Magistrate Judge Lee's finding that the officers had probable cause to search the vehicle based on her crediting the officers' testimony that they smelled marijuana emanating from the vehicle. (Doc. 102, at 2, 7–8.) Again, he only contests the credibility of the officers' testimony; he does not contest that probable cause to search the vehicle would have existed if the testimony were true. (*Id.*) Specifically, Defendant characterizes certain statements by the officers as inconsistent and contradictory—Stanley testified that he smelled a "faint" scent of burnt marijuana, Thompson testified that he smelled a "faint" scent of *unburnt* marijuana, and Leon testified that he smelled an "*overwhelming*" scent of unburnt marijuana. (*Id.* at 7.) He also argues that Thompson's testimony is not credible because he testified that he smelled the unburnt marijuana emanating from the car, but Defendant was smoking a cigarette at the time, which produced strong cigarette smell in the area. (*Id.*) Again, Magistrate Judge Lee addressed this objection in her report and recommendation:

> While Defendant questions whether Trooper Thompson could have detected the strong odor of unburnt marijuana over the cigarette smoke emanating from Defendant's burning cigarette, Defendant did not offer a whiff of evidence to support this challenge. Nor did he successfully attack the Troopers' testimony about their abilities to, and experiences with detecting the odor of marijuana—albeit burnt or unburnt. Although not specifically argued by Defendant in his posthearing brief, Stanley's failure to record in his report whether the detected

6

> odor of marijuana was of burnt or unburnt marijuana is not inherently suspicious. Moreover, the Troopers' testimony is certainly reconcilable with the evidence given (1) Fort acknowledged to Stanley that he had been around persons who smoked marijuana early that day—which plausibly explains the detection of a faint odor of burnt marijuana by Stanley—and (2) an open package of marijuana was found in the Jeep—which plausibly explains the detection of an odor of unburnt marijuana by Thompson (and later Leon).

(Doc. 101, at 19.) The Court agrees with and finds no reason to disturb this credibility determination regarding probable cause for the search because Magistrate Judge Lee carefully considered whether the evidence was internally inconsistent or contradictory and found that it was not. *See VanDiver*, 304 F. Supp. 2d at 937.

The only contradiction that Defendant asserts in his objection which was arguably not addressed by Magistrate Judge Lee was that Thompson smelled a "faint" scent of unburnt marijuana, while Leon smelled an "overwhelming" scent of unburnt marijuana. (Doc. 102, at 7–8.) While this testimony is not inherently contradictory because it can be simply explained by differences in individuals' sensitivity to smells, it can also be explained by the undisputed evidence—that Defendant was smoking a cigarette when Thompson detected the smell. (*Id.*; Doc. 101, at 5.) It is entirely consistent and credible that the scent would be "faint" when Thompson smelled it, because he could only detect it under Defendant's active cigarette smoke, while Leon detected it in the absence of cigarette smoke, so it was no longer "faint" but "overwhelming." Thus, the Court finds no reason in Defendant's objections to disturb Magistrate Judge Lee's credibility determination. *See Irorere*, 69 F. App'x at 236; *Navarro-Camacho*, 186 F.3d at 705.

### C. *Miranda* Waiver

Defendant also objects to Magistrate Judge Lee's finding that he knowingly and intelligently waived his Fifth Amendment rights against self-incrimination before the officers

engaged him in a custodial interrogation. (Doc. 102, at 8–10.) "[T]he accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived *[Miranda]* rights' when making the statement. *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). "The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 382–83 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). *Miranda* waivers can be established through an explicit written waiver or an express oral statement. *Id.* at 383. However, "a waiver of *Miranda* rights may [also] be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" *Id.* at 384 (quoting *Butler*, 441 U.S. at 373). "The relevant question is not whether the 'criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege,' but rather whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.'" *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (alterations in original) (quoting *Colorado v. Spring,* 479 U.S. 564, 574, (1987)).

At the suppression hearing, a video and audio recording was played that captured Leon advising Defendant of his *Miranda* rights and then engaging in a custodial interrogation. (Doc. 101, at 6, 23.) Magistrate Judge Lee described the interaction as follows:

> After Leon then read the *Miranda* advisement of rights to both Defendant and Fort, Leon asked two questions back-to-back: "Do you understand the rights I read you? Understanding these rights do you want to speak to me?" Fort made no acknowledgment of the questions. Leon looked at Defendant and said, "What

8

> about you sir?" Defendant made no verbal response, but he nodded his head. Leon interpreted Defendant's non-verbal head nod as an affirmative answer to each question and told Defendant he would speak to him separately.
>
> In a recorded custodial interrogation at the traffic stop scene, Leon took Defendant aside and talked to him. During this initial on-scene custodial interrogation, Leon concluded Defendant was not being very forthcoming and he stopped the interrogation and had Defendant placed in a patrol car. About five minutes later, an officer told Leon that Defendant asked to speak with him again. In the second recorded custodial interrogation at the traffic stop scene, Leon did not readvise Leon of his *Miranda* rights or ask for another waiver of those rights. Defendant then told Leon that Fort was his little "bro" and he did not want him to go to jail and that he (Defendant) wanted to claim the drugs. Defendant also made other incriminating statements and non-verbal responses.

(*Id.* a 6–7.)

Defendant does not object to this statement of the facts. (Doc. 102, at 8–10.) Rather, he argues that the head nod was not sufficient under the totality of the circumstances to indicate that he understood his rights. (*Id.*) Specifically, Defendant contends that because Leon asked a compound question,—"Do you understand the rights I read you? Understanding these rights do you want to speak to me?"—it is not clear whether Defendant's head nod affirmed the first question, the second question, or was not an affirmation at all. (*Id.* at 9–10.)

Yet again, Magistrate Judge Lee carefully considered these arguments in her report and recommendation and nonetheless found that Defendant validly waived his rights. (Doc. 101, at 24–27); *see VanDiver*, 304 F. Supp. 2d at 937. She reasoned that after nodding his head in response to Leon asking whether he understood English, his head nod could be fairly understood as an affirmative answer to both parts of his compound question. (Doc. 101, at 24–25.) Further, he proceeded to speak freely and without any obvious hesitation or reluctance. (*Id.* at 25.) In fact, Defendant *initiated* the second communication with Leon to claim the drugs to try to help Fort. (*Id.*) Under the totality of these circumstances, and considering that Defendant did not present any evidence of improper police activity or his lack of understanding, the Court finds that

9

Defendant validly waived his *Miranda* rights. *See United States v. Gatewood*, 230 F.3d 186, 193 (6th Cir. 2000) (admitting confession where defendant "failed to advance any evidence of coercive police activity").

### III. CONCLUSION

For the foregoing reasons, Defendant's objection to the report and recommendation (Doc. 102) is **OVERRULED**. The Court **ACCEPTS** and **ADOPTS** the report and recommendation (Doc. 101) and **DENIES** Defendant's motion to suppress (Doc. 72). The Court previously continued the trial deadlines in this case, to be reset after the resolution of Defendant's motions to suppress, sever, and transfer venue. (Doc. 77.) These motions have each been resolved. (*See* Doc. 86.) Accordingly, the following new trial schedule is **ORDERED**:

1. Plea Bargaining shall be concluded by **June 13, 2022**, and any written agreement shall be executed by said date.

2. All motions shall be filed no later than **June 13, 2022**.

3. All requests for jury instructions shall be submitted no later than **June 21, 2022**. The parties shall confer and submit a joint proposal for jury instructions. Before submitting the joint proposal to the Court, the parties must attempt to resolve any disagreements. To the extent there are disagreements as to specific instructions that cannot be resolved, the parties should provide competing instructions in their joint proposal. All jury instructions in the joint proposal, including agreed instructions and competing instructions, shall be supported by citations of authority. A copy of the proposed jury instructions should be sent in Microsoft Word format to **mcdonough_chambers@tned.uscourts.gov**.

4. A final pretrial conference shall be held before the United States District Judge at **3:00 p.m.** on **June 21, 2022**, in Chattanooga, Tennessee. At or before the final pretrial

conference, all parties shall provide a notebook to the Court with exhibits they expect to offer during their cases-in-chief. Each party should also file a written submission advising the Court: (1) how and by whom each document will be authenticated, and (2) the theory of admissibility for the document, with appropriate references to the Federal Rules of Evidence. At the final pretrial conference, the parties should also be prepared to advise the Court whether they intend to offer any out-of-court statements as evidence beyond what is reflected in the exhibit notebook and be prepared to explain why each statement is not barred by the rule against hearsay, the Confrontation Clause, or any other basis. The parties should also be prepared to discuss evidence relating to a crime, wrong, or other act by the defendant(s), whether that evidence is admissible under Federal Rule of Evidence 404(b)(2), and whether the Government has given appropriate notice. The parties shall also disclose to one another and to the Court the technology they intend to use in the courtroom during the trial and how they intend to use it (e.g., display equipment, data storage, retrieval, or presentation devices). This disclosure shall list: (1) the equipment the parties intend to bring into the courtroom to use and (2) the equipment supplied by the Court the parties intend to use. Further, the parties shall disclose to one another the content of their electronic or digital materials by the time of the final pretrial conference and shall confirm the compatibility/viability of their planned use of technology with the Court's equipment by the final pretrial conference. General information regarding equipment supplied by the Court is available on the Eastern District of Tennessee website (**www.tned.uscourts.gov**). Specific questions about Court-supplied equipment should be directed to the courtroom deputy (directory available on website).

5. The trial of this case will be held before the United States District Judge and a twelve-person jury beginning on **June 27, 2022, at 9:00 a.m.** in Chattanooga, Tennessee. If this

case is not heard immediately, it will be held in line until the following day or any time during the week of the scheduled trial date.

    **SO ORDERED.**

                                            /s/*Travis R. McDonough*
                                            **TRAVIS R. MCDONOUGH**
                                            **UNITED STATES DISTRICT JUDGE**